IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AHMED HASSAN NEJAT, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | Case No. 3:03-0742 |
| v. ) | Judge Nixon |
| ) | Magistrate Judge Griffin |
| MICHAEL J. ASTRUE, COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| *Defendant.* ) | |

## ORDER

Pending before the Court is Plaintiff Ahmed Hassan Nejat's Motion for Judgment on the Administrative Record ("Plaintiff's Motion") (Doc. No. 16), Defendant's Response (Doc. No. 22), and Plaintiff's Reply (Doc. No. 27). Magistrate Judge Griffin has issued a Report and Recommendation ("Report") (Doc. No 34) recommending that Plaintiff's Motion be denied. Subsequently, Plaintiff filed timely objections (Doc. No. 37). Upon review of the Magistrate Judge's Report and for the reasons discussed herein, the Court **ADOPTS** the Report in its entirety and **DENIES** Plaintiff's Motion.

### I. BACKGROUND

*A. Procedural Background*

Ahmed Hassan Nejat ("Plaintiff") first filed a claim for Supplemental Security Income ("SSI") benefits with the Social Security Administration ("SSA") in 1996. (Tr. 36, 189, 221-25).

-1-

The claim was denied on February 14, 1997. (Tr. 195-99). Subsequently, on July 17, 1997, Plaintiff filed a second application with SSA, alleging disability beginning May 14, 1997 due to gunshot wounds to his arms, legs, and chest as well as depression, fatigue, and a nervous condition. (Tr. 226-38, 389). SSA denied the claim on August 18, 1997. (Tr. 200-03). Plaintiff requested reconsideration; however, the claim was denied on October 24, 1997. (Tr. 206-07).

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on September 9, 1998. Plaintiff, a non-attorney friend, an interpreter, and a vocational expert ("VE") appeared before the ALJ. (Tr. 73). On December 28, 1998, the ALJ issued a decision denying Plaintiff's claim. (Tr. 70-85). Plaintiff requested that the Appeals Council review the ALJ's hearing. On February 9, 1999 the Appeals Council heard the matter (Tr. 88) and upon consideration, it vacated the ALJ's decision and remanded the case to the ALJ for a new hearing and decision. As grounds for reversal, the Appeals Council cited that the hearing tape could not be located. (Tr. 89-91). A new ALJ conducted a hearing on remand on November 21, 2002. (Tr. 31-69). The ALJ denied Plaintiff's claim on March 13, 2003. (Tr. 12-21). Plaintiff timely requested review of the ALJ's finding. On June 13, 2003, the Appeals Council denied Plaintiff's request for review. (Tr. 7-8).

On August 14, 2003, Plaintiff filed this action to obtain judicial review of the ALJ's final decision. (Doc. No. 1). The Court has jurisdiction under 42 U.S.C. § 405(g). On September 25, 2008, Magistrate Judge Griffin recommended that Plaintiff's motion be denied. (Doc. No. 34).

Plaintiff asserts seven (7) objections to the Magistrate Judge's findings. (Doc. No. 37). Specifically, Plaintiff contends that (1) the ALJ erred when rejecting the opinion of Plaintiff's treating physician in its entirety; (2) the ALJ failed to prove that Plaintiff could perform jobs existing

in significant numbers; (3) the ALJ's rationale for denying benefits does not withstand scrutiny; (4) the ALJ's rationale for rejecting Dr. Kathryn Sherrod's opinion does not withstand scrutiny; (5) the ALJ's finding, that Plaintiff's conditions (Dysthymic Disorder, Post Traumatic Stress Disorder, and obesity) were not severe impairments, is not supported by substantial evidence and the ALJ's failure to consider Plaintiff's obesity is a violation of SSR 00-3p; (6) the ALJ failed to follow applicable regulations, rulings, and case law when evaluating Plaintiff's symptoms; and (7) the ALJ's decision is not supported by substantial evidence. The Court discusses the merits of Plaintiff's objections in turn.

### B. Factual Background

The Court adopts the background section of the Magistrate's Report (Doc. No. 34, at 3-25).

## II. STANDARD OF REVIEW

The Court's review of the Report is de novo. 28 U.S.C. § 636(b) (2008). However, this review is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence shall be conclusive." 42 U.S.C. § 405(g) (2008). Accordingly, if the Commissioner adopts the ALJ's decision, the reviewing court will uphold the decision if it is supported by substantial evidence. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "such evidence as a reasonable mind would accept as adequate to support the conclusion." Richardson v. Pereles, 402 U.S. 389, 401 (1979). It is "more than a mere scintilla of

evidence, but less than a preponderance." Bell v. Comm'r, 105 F.3d 244, 245 (6th Cir. 1996) (citing Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

A finding of substantial evidence holds significant weight on appeal. "Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." Her v. Comm'r, 203 F.3d 388, 389 (6th Cir. 1999); Crum v. Sullivan, 921 F.2d 642, 644 (1990) (citing Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and the Commissioner. Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1993); Besaw v. Sec'y of Health and Human Servs., 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to a different factual conclusion as to the Plaintiff's claim on the merits than that of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. Hogg, 987 F.2d at 331.

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

*A. Plaintiff objects to the ALJ's failure to provide "good reasons" for rejecting Dr. Said Attoussi's opinion, Plaintiff's treating physician.*

Plaintiff asserts that the ALJ's failure to provide "good reasons" for rejecting the treating physician's opinion, Dr. Attoussi, resulted in reversible error. In so arguing, Plaintiff relies on Rogers v. Commissioner of Social Security, 486 F.3d 234 (6th Cir. 2007), which held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the [treating physician's] opinions and for explaining precisely how those reasons affected the weight accorded

-4-

the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." 486 F.3d at 243. Providing good reasons "ensure that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." Id. (internal citation omitted). Specifically, Plaintiff claims that the ALJ failed to provide "good reasons" for discounting Dr. Attoussi's Residuary Functional Capacity ("RFC") opinion, which Plaintiff claims would have supported a finding of disabled. (Doc. No. 37, at 3-4).

Plaintiff's argument fails because the ALJ provided "good reasons" for discounting Dr. Attoussi's opinion. In rejecting Dr. Attoussi's opinion, the ALJ explained that Dr. Attoussi's treatment of Plaintiff was "very limited" and that his treatment records were "[l]argely illegible." (Tr. 17). Furthermore, it appears that the ALJ discounted Dr. Attoussi's opinion in the face of conflicting opinions from both treating and non-treating physicians. For instance, the ALJ considered Dr. Stanley Hopp's opinion that Plaintiff magnified his symptoms. (Tr. 395). In addition, the ALJ considered Dr. Bruce Davis' opinion, who assessed that the Plaintiff could sit for an eight-hour workday and stand and walk for up to six hours during an eight-hour workday. (Tr. 161). As the Magistrate found, there is substantial evidence in the record to support the ALJ's treatment of Dr. Attoussi's opinion. (Doc. No. 34, at 36).

> B. *Plaintiff objects to the ALJ's finding that Plaintiff could perform jobs existing in significant numbers.*

Plaintiff argues that the ALJ erred at Step 5 of the Sequential Evaluation when he found that Plaintiff could perform jobs existing in significant numbers. (Doc. No. 37, at 12). In addition, Plaintiff contends that the ALJ failed to carry his burden of proof regarding Plaintiff's ability to perform jobs existing in significant numbers. (Id.). Specifically, Plaintiff disagrees

-5-

with the ALJ's finding that Plaintiff could perform light jobs such as "inspector (800 jobs), assembly (2000 jobs), and hand packer (2000 jobs)." (Tr. 19). Plaintiff also takes issue with the ALJ's reliance on the Vocational Expert's finding that Plaintiff 'could perform jobs existing in significant numbers in the economy." (Tr. 20).

In reaching his decision the ALJ relied on the Vocational Expert ("VE"), Lisa Courtney's testimony at the November 21, 2002 hearing. In concluding that Plaintiff had the ability to perform certain work, the VE relied on information from the record, which included Plaintiff's physicians' opinions and treatments. (Tr. 49). In calculating the number of existing jobs that Plaintiff could perform, the VE relied on her expertise of unskilled work in Tennessee. (Tr. 53). Considering Plaintiff's limitations, the VE testified that there were approximately 800 to 900 inspection jobs (Tr. 53), a couple thousand assembly jobs (Tr. 53-54), and roughly 2,000 packing jobs that Plaintiff could perform. As a result, the record contains substantial evidence to support the ALJ's finding that Plaintiff could perform jobs existing in significant numbers in the economy.

   C. *Plaintiff's additional objections (3-7) to the ALJ's findings.*

In addition to the two objections discussed above, Plaintiff makes five additional objections. However, unlike the two abovementioned objections, Plaintiff fails to provide supporting arguments for the additional five. The additional objections are as follows: (3) the ALJ's rationale for denying Plaintiff benefits does not withstand scrutiny; (4) the ALJ's rationale for rejecting Dr. Kathryn Sherrod's opinion does not withstand scrutiny; (5) the ALJ erred when finding that Plaintiff's impairments, Dysthymic Disorder, Post Traumatic Stress Disorder, and

obesity were neither, singly nor combined, serve impairments; (6) the ALJ failed to follow applicable regulations, rulings, and case law regarding the evaluation of Plaintiff's symptoms; and (7) the ALJ's decision is not supported by substantial evidence. (Doc. No. 37, 15).

Some of the Plaintiff's objections are duplicative, such as Plaintiff's general assertions in objection three (3), that the ALJ's finding denying benefits to Plaintiff does not withstand scrutiny, and in objection seven (7), that the ALJ's decision is not supported by substantial evidence. Plaintiff also makes a blanket assertion in objection six (6) that the ALJ "failed to follow applicable regulations, rulings, and case law" when evaluating Plaintiff's symptoms. (Id.). However, Plaintiff fails to identify any specific regulations, rulings, or case law that the ALJ allegedly violated. Therefore, the Court declines to address objections three (3), seven (7), and six (6).

Given that Plaintiff offers greater specificity in objections four (4), the ALJ's rejection of Dr. Sherrod's opinion, and in objection five (5), the ALJ's findings involving Plaintiff's impairments, the Court analyzes those objections in turn.

> (1) *Plaintiff objects to the ALJ's rational for rejecting Dr. Kathryn Sherrod's opinion because it does not withstand scrutiny.*

Plaintiff claims that the ALJ failed to give sufficient weight to the opinions of Dr. Sherrod, a clinical psychologist. Dr. Sherrod and Lisa Patterson, a licensed psychological examiner, conducted a thorough examination of Plaintiff on July 1, 2002 and produced a report detailing their observations and findings. (Tr. 166-70). The ALJ discussed the report and findings at length in his decision. (Tr. 18-19). Although the ALJ failed to refer to Dr. Sherrod by name in his decision, he referred to Lisa Patterson by name, who examined Plaintiff with Dr.

Case 3:03-cv-00742  Document 38  Filed 01/16/09  Page 7 of 10 PageID #: 111

Sherrod. (Tr. 170).

In his decision, the ALJ explained that he accorded little weight to Dr. Sherrod's opinion given Plaintiff's "lack of effort" during the examination and "inconsistences[] and omissions of facts ... elsewhere in the record ..." (Tr. 19). The ALJ also noted that even Dr. Sherrod doubted her findings based on Plaintiff's conflicting test results and suspected intentional error on Plaintiff's part during the evaluation. (Tr. 18-19). "Some of the errors [Plaintiff] made on the Bender [test] were more typical of intentional errors than of actual errors ... he was also not working to the best of his ability during this evaluation." (Tr. 169).

The abovementioned inconsistencies that impacted the ALJ's treatment of Dr. Sherrod's opinion are found in the Plaintiff's record. For instance, the Plaintiff told Dr. Sherrod, during his July 2002 examination, that he did not do household chores and that his son had to assist him with basic tasks, such as bathing and dressing. (Tr. 167-68). However, during Plaintiffs' November 2002 hearing, he testified that he fixed meals with his wife, that he helped clean the house along with his wife and son, and that the three went shopping. (Tr. 44-45).

Therefore, Plaintiff is incorrect that the ALJ's treatment of Dr. Sherrod's opinion does not withstand scrutiny. On the contrary, there is substantial evidence in the record to support the ALJ's treatment of Dr. Sherrod's opinion.

> (2) *Plaintiff objects to the ALJ's finding that Plaintiff's conditions were not severe impairments because it is not supported by substantial evidence and the ALJ's failure to consider Plaintiff's obesity violates SSR 00-3p.*

Plaintiff argues that the ALJ erred when he found that Plaintiff's conditions – specifically Dysthymic Disorder, Post Traumatic Stress Disorder, and obesity – were not serve impairments.

-8-

However, the ALJ adequately considered all of Plaintiff's reported impairments when concluding that he was not disabled. (Tr. 17-20).

The ALJ discussed Plaintiff's mental disorders at length throughout the decision. (Tr. 17-19). Despite Plaintiff's assertion that he suffers from depression, the ALJ noted that Plaintiff has never received psychological treatment. (Tr. 18). Although the ALJ noted that Plaintiff's examiners assigned a diagnostic impression of "dysthymic disorder, with symptoms of post-traumatic stress disorder," (Tr. 18) the ALJ also considered conflicting information within the record. Specifically, the ALJ found discrepancies between Plaintiff's activities and examiners' recorded statements versus information from forms that Plaintiff filled out or had filled out on his behalf. (Tr. 19). It appears that these discrepancies led the ALJ to ultimately conclude that Plaintiff was not disabled. (Tr. 19).

Furthermore, Plaintiff's obesity claim relies on a non-treating physician's diagnosis, which was based on inaccurate information. Presumably, Plaintiff relied on Dr. Bruce Davis' diagnosis of "Class 1 obesity." (Tr. 161). Dr. Davis based his finding on the premise that Plaintiff is 5' 6 ½" and weights 188 pounds. (160). However, Plaintiff's height is recorded as 5'10" by Dr. Attoussi, his treating physician (Tr. 159) and as 5'9" by Dr. Scott Dube (Tr. 152), another treating physician. Therefore, it appears that Dr. Davis' height assessment is incorrect, which also means his finding of obesity is incorrect because obesity is based on the ratio of a person's height and weight. In fact, there are no other reports in Plaintiff's record that contain comments or findings regarding Plaintiff's alleged obesity. No other examiner made a finding similar to Dr. Davis'. Even with the lack of evidence supporting a finding of obesity, the ALJ considered and made note of Dr. Davis' finding in his decision; he simply chose not to rely on it

given the conflicting information elsewhere in the record. (Tr. 17).

Social Security Ruling 00-3p ("SSR 00-3p") requires an ALJ to consider the effects of a Plaintiff's obesity throughout the five-step inquiry. However, due to the evidence in the report that overwhelming supports a finding that the Plaintiff is not obese, the ALJ was not required to consider Plaintiff's obesity throughout the five-step inquiry. Therefore, the ALJ did not violate SSR 00-3p.

Thus, there is substantial evidence in the record to support the ALJ's decision, including his finding that Plaintiff's conditions are not, singularly nor combined, severe impairments and the ALJ's treatment of Plaintiff's alleged obesity.

### IV. CONCLUSION

The Court does not find merit in Plaintiff's arguments because there is substantial evidence in the record to support the ALJ's decision. Therefore, Plaintiff's Motion is **DENIED** and the Court **ADOPTS** the Magistrate Judge's Report in its entirety. This Order terminates this Court's jurisdiction over the above-styled action and the case is **DISMISSED**.

It is so ORDERED.

Entered this the ___16th___ day of January, 2009.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT